JUDITH C. ZINT, ADMINISTRATRIX (ESTATE OF GEORGE ZINT) *vs.* CHARLES E. WHEELER.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued October 3d—decided November 7th, 1933.

*Joseph G. Shapiro,* with whom, on the brief, were *Harry A. Goldstein* and *Charles S. Brody,* for the appellant (defendant).

*Samuel Reich,* with whom, on the brief, were *Philip Reich, Adrian W. Maher* and *D. Harold Cotter,* for the appellee (plaintiff).

HAINES J. The decedent was a motorcycle policeman in Stratford, and about midnight of Saturday, July 9th, 1932, went off duty and was returning to

the police office on his motorcycle. Going south on Main Street, on his right-hand side of the highway, he came into collision with an automobile operated by the defendant, and died soon afterward as a result of injuries thus received. The jury gave a verdict for the plaintiff. The court denied the defendant's motion to set the verdict aside as against the law and the evidence and the appellant presents this as his sole claim of error. He contends that the jury could not reasonably have found from the evidence that the defendant was negligent or that the contributory negligence of the decedent was not established. Under our present procedure the plaintiff assumed the burden of proof of the first allegation and the defendant of the latter. General Statutes, Cum. Sup. 1933, § 1149b.

A careful study of all the evidence with the map and other exhibits, discloses that the defendant was proceeding north on his right-hand side of Main Street and approaching an underpass where that street passes under a railroad bridge, while the motorcycle was approaching the underpass from the opposite side. Practically coincident with the south edge of the west abutment of the bridge, the north line of Linden Avenue intersects the west line of Main Street, but Linden Avenue does not cross the latter. The underpass is about 34.3 feet in width on the traveled way, while opposite the center line of Linden Avenue Main Street is approximately 64.8 feet wide. Two lines of trolley rails extend through the center of Main Street and the underpass. Just east of the most easterly of these rails and about twenty feet south of a line representing the extension of the south line of Linden Avenue, was suspended a six hundred candlepower incandescent street lamp which amply lighted the scene of the accident.

In the underpass the space between the most west-

erly trolley rail and the west abutment was about ten feet and it was in this space that the motorcycle emerged from the underpass. Measurements by the chief of police, which the defendant conceded to be correct, showed that at a point some twenty-two feet south from the point where he emerged, the decedent had applied his brakes, making a continuous and straight brake mark for forty feet, then, following a space of about ten feet, was a broken mark made by metals for a considerable distance further south.

There was evidence that the defendant turned to his left across the trolley rails at a point shown on the map to be about thirty feet south of what would be the south line of Linden Avenue extended, pointing his car diagonally toward that street, thus "cutting" the corner and heading for the intersection a considerable distance south and left of the center thereof. While the defendant proceeded thus across the rails to enter the intersection, the decedent's motorcycle approached from the defendant's right and entered the intersection and thus was entitled to the right of way. The defendant testified that he saw through the underpass the light of the approaching motorcycle when he turned his car across the rails toward Linden Avenue and that the light was then two hundred and thirty feet away, but that the car was not stopped until the front wheels were two feet west of the most westerly rail of the trolley tracks. There was other evidence, however, from which the jury could have found that the front of the car was nine feet over that rail or thirty-two feet from the point where the defendant first saw the light of the approaching motorcycle, and that he had thus turned to the left from his own lane into the lane for southbound traffic, and that the car was projecting into that lane some distance when suddenly brought to a stop. The jury could also have found that he

gave no signal or other warning of his intention to turn out of his own lane, while the motorcycle was coming from his right.

We cannot hold as unwarranted the conclusion of the court that the evidence permitted the jury to find the defendant negligent.

The defendant claims to have established that the decedent was guilty of contributory negligence. There was a conflict of evidence as to the speed of the motorcycle, the estimates of certain witnesses varying greatly. There was testimony by two expert witnesses, however, as to the story told by the brake marks of the motorcycle, both of long experience in the use of motorcycles, and one of them the dealer of twenty years' experience who had sold the wheel which the decedent was riding. Both testified that above a certain speed the application of the brakes would cause the rear wheel to jump up and down or turn to one side, and "shimmy." One testified that the unbroken brake mark shown on the highway could not have been made if the motorcycle was moving as fast as forty miles per hour and the dealer insisted that the limit of speed would be even less and that he spoke from an experience of having tried it out. The jury were entitled to find that the motorcycle was not moving at an excessive or unreasonable speed. The decedent had the right of way. The jury could not unreasonably have found he was on his own right side of the road and that, as he emerged from under the bridge, the defendant's car was projected into his path approximately nine feet, and its lights were turned across the road toward Linden Avenue. The evidence justified a conclusion that the speed of the motorcycle was not—at most—over forty miles per hour and at this speed less than one and one half seconds were necessary to cover the sixty-two feet intervening be-

tween the machines. The decedent was entitled to assume that no car would be turned into his path from his left without any signal and so as to require him to turn his own machine in that space of time to avoid a collision and at a distance of only about sixty feet from where he entered the intersection. If the negligence of the defendant had thus created an emergency, under the conditions the law did not put upon the decedent the legal responsibility to avoid the collision. This conclusion accords with various principles illustrated in the decisions of this court in *Eukers* v. *Summer*, 110 Conn. 230, 147 Atl. 671; *McCleary* v. *Rothenberg*, 111 Conn. 730, 151 Atl. 164; *Barry* v. *Leiss*, 109 Conn. 484, 147 Atl. 18; *Hall* v. *Root*, 109 Conn. 33, 145 Atl. 36; *Andrew* v. *White Bus Line Corporation*, 115 Conn. 464, 161 Atl. 792. In the absence of assigned error in the charge, we must assume the jury was correctly charged in accordance with the law of those cases.

In view of the earnestness with which this case has been defended, we have given particular and critical attention to all the evidence which the jury had before them.

We necessarily attach much weight to the views of the trial judge, who has seen and heard all the witnesses and thus is in a better position to evaluate the truth than where dependence is placed upon the printed record alone. *Richard* v. *New York, N. H. & H. R. Co.*, 104 Conn. 229, 132 Atl. 451.

From the factual situation disclosed by the evidence, we cannot say that the court was not justified in sustaining the jury's finding that the decedent was not guilty of contributory negligence.

There is no error.

In this opinion the other judges concurred.